UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE LOUISE SEVIER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,<br><br>　　　　Defendant. | Case No. CV 15-5950-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On August 6, 2015, plaintiff Bonnie Louise Sevier filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"),[1] seeking a review of a denial of supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill, who is now Acting Commissioner of Social Security Administration, has been substituted as the defendant.

1

before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") properly considered plaintiff's credibility. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 4-12; Defendant's Memorandum in Support of Answer ("D. Mem.") at 6-11.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly consider plaintiff's credibility. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was forty-nine years old on January 1, 2006, the alleged disability onset date. AR at 81. Plaintiff holds an advanced degree and has past relevant work as a mail carrier, a survey worker, and a case worker. *Id*. at 43, 59.

On January 31, 2012, plaintiff filed an application for SSI, alleging an onset date of January 1, 2006 due to lumbago, restless leg syndrome, and hypertension. *Id*. at 81. The Commissioner denied plaintiff's application initially, after which she filed a request for a hearing. *Id*. at 90-97.

Plaintiff, representing herself, appeared at a hearing before the ALJ on May 21, 2013. *Id*. at 64-80. The ALJ granted plaintiff's request for a postponement in order to provide her time to review her case file. *Id*. On October 15, 2013, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 40-63. The ALJ also heard testimony from Frank Corso, a vocational expert. *Id*. at 58-62. On January 21, 2014, the ALJ denied plaintiff's claim for

benefits. *Id*. at 21-36.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since January 31, 2012, the application date. *Id*. at 33.

At step two, the ALJ found plaintiff suffered from the following severe impairments: cervical spine and lumbar spine disc disease. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined she had the RFC to perform light work, with the limitations that plaintiff could: lift or carry up to ten pounds frequently and twenty pounds occasionally; stand or walk about six hours in an eight-hour workday with normal breaks; sit about six hours in an eight-hour workday with normal breaks; engage in frequent ramp, stair, ladder, rope, and scaffold climbing; and engage in frequent balancing, stooping, kneeling, crouching, and crawling. *Id*.

The ALJ found, at step four, that plaintiff could perform her past relevant work as a survey worker and caseworker. *Id.* at 35. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 35-36.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff argues the ALJ failed to properly consider her credibility. P. Mem. at 4-12. Specifically, plaintiff contends the ALJ did not provide clear and convincing reasons supported by substantial evidence for discounting her credibility. *Id.*

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. The lack of objective medical evidence to support allegations of limitations is also a factor that may be considered when evaluating credibility, but it may not be the only factor considered. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating

credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").

At the first step, without expressly stating so, the ALJ appeared to have found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. *See* AR at 34. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ provided five reasons for discounting plaintiff's credibility: (1) her subjective complaints were not supported by objective clinical findings; (2) an interviewer at the Social Security field office did not observe plaintiff experiencing any problems; (3) she received conservative treatment; (4) she failed to follow her treatment plan; and (5) her alleged limitations were inconsistent with her daily activities. *Id*. at 34-35. The ALJ's reasons for discounting plaintiff's credibility were, for the most part, not supported by substantial evidence.

### A. Lack of Clinical Evidence

The first reason cited by the ALJ for finding plaintiff less credible was that her allegations were inconsistent with the objective clinical evidence. *Id*. at 34; *see Rollins*, 261 F.3d at 856-57. Specifically, the ALJ noted there were no: clinical findings to support the alleged symptoms of restless leg syndrome; documentation to show plaintiff's symptoms related to restless leg syndrome were not improving with treatment; documentation to corroborate plaintiff had a sleep disorder due to restless leg syndrome; findings to support functional limitations from the cervical spine and lumbar spine disc disease; and findings to support hand and finger numbness. AR at 28-30. Further, the ALJ noted the treatment notes did not contain mention of any alleged side effects. *See id*. at 27-29.

As an initial matter, the administrative record contains only one medical

record from prior to 2011, a cervical spine x-ray dated December 21, 2009. *See* AR at 315. This appears to be due to the fact the Social Security Administration only requested medical records from January 1, 2011 though the present. *See, e.g., id*. at 303. Although plaintiff is only entitled to SSI benefits from the date of her application, her alleged onset date is January 1, 2006 and any records from that date forward would be relevant. As discussed below, the record was ambiguous and incomplete and the ALJ therefore had a duty to further develop it.[3] *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (the Commissioner has a duty to develop the record when it is ambiguous); *Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").

First, with regard to restless leg syndrome, the treatment notes show a diagnosis and treatment for the condition.[4] *See* AR at 284-85; *see also id*. at 291. Although the ALJ correctly notes there were no clinical findings consistent with the alleged symptoms of restless leg syndrome, in fact no clinical tests exist for diagnosing restless leg syndrome. *See* http://www.ninds.nih.gov/disorders/restless_legs/detail_restless_legs.htm. Instead, physicians rely on patient's descriptions of the symptoms to make a diagnosis. *See id.* Therefore, in this instance, the fact that there were no clinical findings to support the restless leg syndrome cannot be a basis for finding plaintiff less credible. Moreover, plaintiff's restless leg syndrome diagnosis was made prior to 2011, but the Social Security Administration did not request any medical records from prior to 2011.

---

[3] Indeed, at least one medical center indicated that although it had no responsive documents, it had plaintiff's medical records from prior to 2011. *See* AR at 299.

[4] Plaintiff does not raise this as an issue, but the court notes that despite the diagnosis and plaintiff's complaints, the ALJ, at step two, failed to find plaintiff had the severe impairment of restless leg syndrome.

*See, e.g.,* AR at 303.

The ALJ also notes there was no objective evidence of severe disuse muscle atrophy or loss of muscle tone, bulk, mass, or strength that would be consistent with plaintiff's "alleged inactivity." AR at 34. But restless leg syndrome does not result in these conditions. Indeed, as the ALJ recognized, plaintiff complained that her restless leg syndrome required her to shift positions, walk, and otherwise move frequently, although she quickly tires. *See id.* at 23-24, 46-52. It is therefore unclear why the ALJ believed plaintiff alleged inactivity to a degree that one would expect to see muscle atrophy.

The ALJ correctly notes that other than two treatment notes from 2011 and 2012, plaintiff's medical record does not document her alleged symptoms related to restless leg syndrome. *See* AR at 284-85. Nor does the record contain complaints of the medication side effects plaintiff now alleges. Neither of these findings fall under the rubric of lack of objective clinical findings – they would be subjective findings. Nevertheless, the ALJ's cited reasons are relevant because the omissions demonstrate inconsistencies with plaintiff's allegations. Presumably, had plaintiff's symptoms or side effects been as debilitating as alleged, she would have mentioned them to her physicians.

Second, the ALJ determined plaintiff's alleged pain and functional limitations from her cervical and lumbar spine disc disorders were similarly unsupported by objective clinical findings. *See* AR at 29-31. There is no dispute plaintiff suffered from the impairment of cervical spine disorder and lumbar spine disorder. *See id.* at 33. The diagnostic images support plaintiff's complaints of pain. A December 2009 x-ray showed narrowing at C5-6 and noted the possibility of posterior foramen impingement. *Id*. at 315. A June 2013 MRI revealed multi-level degenerative disc disease with mild to moderate spinal stenosis, severe discogenic disk disease with loss of disk space height and hydration, and slight

disk bulge. *Id*. at 358-59. Plaintiff also experienced pain on the left side when performing a straight leg raise. *Id*. at 382.

The question therefore is not whether plaintiff suffered from spine disorders but rather the degree of functional limitations caused by these impairments. The ALJ correctly notes that there were no objective findings of functional limitations, but it appears that no physician ever performed tests to determine plaintiff's functional limitations. When the record is ambiguous, as it is here, the ALJ has a duty to develop the record, which may include retaining a medical expert or ordering a consultative examination. *See Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."); 20 C.F.R. § 416.919a(a).

The ALJ also correctly notes that, as with the medication side effects, plaintiff did not report pain. To the contrary, plaintiff regularly reported she was experiencing no pain to her physicians. *See* AR at 285-91, 376-80. At first glance, plaintiff's reports of no pain would appear to support the ALJ's adverse credibility finding because they were inconsistent with the allegations of pain she made in her application. But the record contains a further contradiction. Although the treatment notes show plaintiff reported no pain, her physicians prescribed pain medication. These ambiguities further demonstrate the need for the ALJ to develop the record.

Accordingly, the ALJ's first reason for discounting plaintiff's credibility – lack of objective evidence – was not supported by substantial evidence. Although the absence of *subjective* complaints regarding side effects and pain in the medical records is in part a clear and convincing reason supported by evidence, there is some ambiguity in the record regarding plaintiff's pain.

### B. Lack of Observed Symptoms During Interview

The ALJ's second reason for discounting plaintiff's credibility was that an SSA employee observed that plaintiff, during an interview, had no problems with hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, using her hands or writing, or answering questions. AR at 34; *see id.* at 216. The ALJ may consider any observations about a claimant recorded by SSA employees during interviews. SSR 96-7p. But here, most of the observations are irrelevant. Plaintiff did not allege any difficulties with any of the observed factors except for sitting, standing, and walking. As for the absence of problems with sitting, standing, and walking during the interview, those observations, by themselves, do not constitute substantial evidence to support the ALJ's credibility finding. Plaintiff admittedly could sit, stand, and walk for short periods. There is no evidence of the length of the interview. Thus, although the SSA employees' observations may be a factor to support the ALJ's credibility finding, without more, the observations do not constitute substantial evidence, and are not a clear and convincing reasons to discount her credibility.

### C. Conservative Treatment

The third reason cited by the ALJ for discounting plaintiff's credibility was she received conservative treatment. AR at 34; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks and citation omitted). Plaintiff's physicians treated her neck and back pain with anti-inflammatory medication and her restless leg syndrome with Gabapentin. *See, e.g.,* AR at 366-68. The physician's treatment of plaintiff's neck and back pain constituted conservative treatment. *See Tommasetti*, 533 F.3d at 1040 (describing anti-inflammatory medication as conservative treatment). As for

plaintiff's restless leg syndrome, there is no non-conservative treatment for the condition. Restless leg syndrome is treated by moving the limbs, lifestyle changes, and medications such as Gabapentin. In short, plaintiff received conservative treatment for her back and neck pain, but not for her restless leg syndrome. Thus, the ALJ's third reason for finding plaintiff less credible – conservative treatment – is only partially supported by substantial evidence.

### D. Failure to Follow Treatment

The ALJ's fourth reason for finding plaintiff less credible was her failure to comply with her treatment plan. AR at 34; *see Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment weighs against a claimant's credibility). The ALJ found plaintiff did not always take her medication as directed, did not always check her blood pressure as directed, and did not follow her doctor's advice regarding her water intake. AR at 34.

Plaintiff's medical records contain no indication of non-compliance with her treatment plan, and nowhere in the record is there reference to any failure by plaintiff to check her blood pressure as directed. At the hearing, however, plaintiff's testimony reflected other minor non-compliance. Plaintiff testified she did not comply with her doctor's suggestion she stop drinking liquids after 8:00 p.m., in order to avoid using the restroom throughout the night, because her medications made her dehydrated. *Id*. at 53. Plaintiff testified that she had tried not to take her diuretic because of the side effects. *Id*. at 53-54. Plaintiff further testified she believed dizziness was a side effect of her blood pressure medication because, on the occasions she skipped her blood pressure medication, she would not feel dizzy. *Id*. at 56. And because of the side effects of the blood pressure medication, plaintiff took a lower dosage than prescribed. *Id*. at 57-58.

Aside from the lower dosage of blood pressure medication, the other instances of non-compliance were minor or appeared to have been temporary

attempts to curb the side effects of plaintiff's medications. Thus, the evidence shows plaintiff was not fully compliant with limited aspects of her treatment plan, but it would be a stretch for this evidence to support a finding of non-compliance.

### E. Activities of Daily Living

Finally, the ALJ found plaintiff less credible because her daily activities were inconsistent with her alleged limitations and side effects of her medications. AR at 35; *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct). Specifically, the ALJ noted plaintiff could lift light objects and carry them short distances, shop for groceries, drive a car, read, watch television, go to the library, use a computer, go to the park, do laundry, and exercise regularly by walking. AR at 35. This reason is not supported by substantial evidence.

In an Exertional Questionnaire dated March 22, 2012, plaintiff reported her back pain affected her ability to sit, stand, walk, and lay down for "reasonable periods of time." *Id*. at 231. Plaintiff stated she could walk in fifteen-minute increments, but her back would ache and she would feel exhausted afterwards. *Id*. Plaintiff explained she would experience dizziness from bending and she could lift light items so long as it did not require bending or stooping. *Id*. at 232. Plaintiff reported her restless leg medication caused her to be sleepy. *Id*. at 233. Plaintiff further reported she could drive for very short distances, shop for groceries so long as the items were small, and do housework in fifteen-minute increments. *Id*. at 232-33.

At the October 2013 hearing, plaintiff testified she needs to change positions from sitting to standing and walking because of her restless leg syndrome, the restless leg syndrome prevented her from sleeping at night, and the medication for the restless leg syndrome helped her sleep but caused lethargy

during the day. *Id*. at 47-48. Plaintiff testified she could sit and stand for about ten to fifteen minutes at a time but then needed to change positions, and she could walk about half a block. *Id*. at 49. Plaintiff further testified she could lift five pounds. *Id.* at 50. Regarding other activities, plaintiff testified she tried to read, go to the library, use a computer, go to the park, and watch television, but she spent most of the time shifting between laying, standing, and sitting because of her restless leg syndrome. *Id*. at 51.

Inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible. *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346. But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, plaintiff's daily activities were not inconsistent with her alleged symptoms and side effects. Plaintiff's walking, standing, sitting, and lifting abilities were consistent with her testimony that she fatigued easily and her pain and restless leg syndrome required her to constantly shift positions. The fact that plaintiff tried to read, use a computer, watch television, and engage in other normal activities did not demonstrate that plaintiff's symptoms were less severe than alleged, particularly when viewed in conjunction with plaintiff's statement that she had to continuously shift positions when engaged in those activities. As for plaintiff's exercise, plaintiff's treatment note dated June 14, 2011 only indicates plaintiff walked for exercise but does not provide any information regarding the frequency, intensity, or duration of the walking. Therefore, plaintiff's daily activities were not a clear and convincing reason supported by

13

1 substantial evidence for an adverse credibility finding

2     In sum, the majority of the ALJ's reasons for discounting plaintiff's
3 credibility were not clear and convincing and supported by substantial evidence.
4 Only the omission of any mention by plaintiff of subjective complaints of pain and
5 side effects in the medical records, and the conservative treatment of plaintiff's
6 neck and back pain, are supported by evidence.  Given the absence of plaintiff's
7 full medical record, and on balance, the ALJ's reasons were not clear and
8 convincing and supported by substantial evidence.

## V.

## **REMAND IS APPROPRIATE**

11     The decision whether to remand for further proceedings or reverse and
12 award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,
13 888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this
14 discretion to direct an immediate award of benefits where: "(1) the record has been
15 fully developed and further administrative proceedings would serve no useful
16 purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting
17 evidence, whether claimant testimony or medical opinions; and (3) if the
18 improperly discredited evidence were credited as true, the ALJ would be required
19 to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020
20 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with
21 instructions to calculate and award benefits).  But where there are outstanding
22 issues that must be resolved before a determination can be made, or it is not clear
23 from the record that the ALJ would be required to find a plaintiff disabled if all the
24 evidence were properly evaluated, remand for further proceedings is appropriate.
25 *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,
26 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for
27 further proceedings when, even though all conditions of the credit-as-true rule are
28

satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ failed to properly consider plaintiff's credibility, and failed to fully develop the record. On remand, the ALJ shall reconsider plaintiff's subjective complaints and either credit her testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. The ALJ shall also further develop the record as needed, which may include ordering a consultative examination and obtaining any additional medical records. The ALJ shall then proceed through steps two, three, four, and five to determine what work, if any, plaintiff was capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: January 31, 2017

SHERI PYM
United States Magistrate Judge